IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

AEMER K. C. EL,

                Plaintiff,

      v.

LYNN A. WEHLING et al.,

              Defendants.

HONORABLE JEROME B. SIMANDLE

Civil Action
No. 12-7750 (JBS/JS)

**OPINION**

---

APPEARANCES:

Mr. Aemer K. C. El
25 Maplewick Lane
Willingboro, NJ 08046
     Plaintiff, pro se

**SIMANDLE, Chief Judge:**

**I.   INTRODUCTION**

     In this action, pro se Plaintiff Aemer K. C. El's Fifth

Amended Complaint consists of 49 "counts" sprawled across 537

pages. [Docket Item 54.][1] Plaintiff's Fifth Amended Complaint is

---

[1] On January 30, 2015, the Court granted Plaintiff's application
to proceed in forma pauperis and directed the Clerk of Court to file
Plaintiff's Fifth Amended Complaint received on August 21,
2014. [Docket Item 59.] Since the filing of his Fifth Amended
Complaint, Plaintiff has submitted, on three separate occasions,
a series of documents identified as "exhibits." [Docket Items
61-63.] The most recent of these submissions, received by the
Clerk's Office on April 21, 2015, after this opinion was nearly
complete, lists 70 exhibits, totaling more than 175 pages. The
Court will not consider these belated submissions as part of its
obligation to screen the Fifth Amended Complaint under 28 U.S.C.
§ 1915(e)(2). Plaintiff did not explicitly or implicitly rely on
these so-called exhibits in his 537-page complaint and he
submitted them nearly eight months after the Clerk's Office

nearly unprecedented in its prolixity, redundancy, and
discursiveness. It is full of rhetoric and material that is not
pertinent to the cognizable causes of action. Nevertheless, it
appears that the crux of Plaintiff's Complaint is an incident in
which he was arrested by members of the Cumberland County Police
Department, the City of Vineland Police Department, and the New
Jersey State Police and charged with various offenses including
weapons and drug offenses. Because Plaintiff brings this action
in forma pauperis, the Court has an obligation to screen the

---

received his Fifth Amended Complaint and nearly three months
after this Court directed it to be filed. Plaintiff's continual
submissions only exacerbate the confusion caused by his prolix
and voluminous complaint and compound his violation of Rule 8,
Fed. R. Civ. P., which requires "a short and plain statement of
the claim showing that the pleader is entitled to relief."
Binsack v. Lackawanna Cnty. Prison, 438 F. App'x 158, 160 (3d
Cir. 2011) (finding a violation of Rule 8 where plaintiff's
complaint and exhibits of almost 200 pages were "so excessively
voluminous and unfocused as to be unintelligible"). When
confronted with a similar situation in which a pro se
plaintiff's fourth amended complaint consisted of over 1,250
pages, including 1,000 pages of exhibits, this Court noted that
"[p]laintiffs are not permitted 'to incorporate an endless
series of external documents into a complaint simply 'by
reference' to them, as this would lead to an impossible task for
defendants in filing their answers, and for courts in reviewing
the sufficiency of complaints.'" Rogers v. Morrice, Civ. 12-7910
(JBS), 2013 WL 5674349, at *3 (D.N.J. Oct. 16, 2013) (quoting In
re Schering Plough Corp. Intron/Temodar Consumer Class Action,
678 F.3d 235, 251 (3d Cir. 2012)). Such reasoning is even more
persuasive in the present case, where Plaintiff has submitted
hundreds of pages of documents months after submitting his
complaint, which are not even mentioned therein. Therefore, the
Court will disregard these tardy and voluminous submissions. In
doing so, the Court makes no determination as to their ultimate
relevance or admissibility.

Complaint under 28 U.S.C. § 1915(e)(2). For the reasons discussed below the Court will dismiss in part Plaintiff's Fifth Amended Complaint. The Court will permit Plaintiff's claims for unlawful search and seizure, excessive force, false arrest, and malicious prosecution to proceed at this time.

## II.  BACKGROUND

### A.   Facts

Plaintiff's Fifth Amended Complaint is extremely lengthy and disjointed, rendering the Court's task in gleaning the relevant facts rather difficult. The Court recounts, and accepts as true for the instant purposes, the following factual allegations, which appear throughout the voluminous Complaint interspersed with repeated, and frequently incoherent, digressions on the history of the Moors, the legacy of slavery in the United States, and contemporary drug policy.

On or about April 21, 2010, members of the Cumberland County Narcotics Task Force, the Cumberland County Prosecutor's Office, the City of Vineland Police, T.E.A.M., and New Jersey State Police "forcibly gained entry into a home" where Plaintiff was a guest. (5th Am. Compl. [Docket Item 54] ¶ 85.) Plaintiff awoke to loud noises and yelling and found "several individuals dressed in black pointing [MP-5 submachine guns and P220's] at his head, back and body." (Id.) At no point did any of the individuals identify themselves as a police officer. (Id. ¶ 86.)

3

The officers "removed the plaintiff from the bed, conducted a search of his person," and took him to the rear of the property where he was held by "the Vineland and Cumberland County Officers." (Id.) Sergeant Steven O'Neill, Jr. searched Plaintiff by using "his fingers to reach in private regions [anal and genital] [sic] of the plaintiff's body similar to how white slavers would do to an African." (Id.) When Plaintiff complained, "O'Neil responded by pushing the handcuffed Plaintiff into the wooden banister" and requiring Plaintiff to sit with "extremely tight handcuffs for two to three hours while the defendants searched the residence." (Id.) While in police custody, Lynn Wehling "without identifying herself[,] questioned the plaintiff . . . for a social security number, name, address and birth date." (Id.) Plaintiff provided all but his social security number. (Id.) Thereafter, Gamaliel Cruz searched the vehicles on the property, "which were not listed as property to be searched in the purported search warrant or affidavit," and found Plaintiff's "Moorish Islamic Corporate I.D. and Travel Document," then turned it over to the Cumberland County Narcotics Task Force. (Id. ¶ 87.)

Plaintiff alleges that the officers involved in the search were purportedly investigating "an entirely different person," Scott T. McArthur, and the officers had a search warrant for McArthur's home. (Id. ¶ 88.) Plaintiff contends that he was

4

cooperative throughout the search, which ultimately failed to
yield any evidence of marijuana or contraband. (Id.)
Nevertheless, the officers kept Plaintiff handcuffed even though
he "posed no immediate threat" and "did not resist arrest." (Id.
¶ 89.) In addition to having guns pointed at him and being
handcuffed too tightly for an extended period of time, Plaintiff
asserts that he was incarcerated without socks which could have
led to "foot fungus on his right foot and malnutrition." (Id.)
It appears that Plaintiff was prosecuted in Vineland Municipal
Court. Plaintiff appeared before Judge Telsely on May 7, 2010,
represented by a public defender, Frank Amari. (Id. ¶¶ 89-90,
94.)

On or about September 18, 2012, in response to Plaintiff's
discovery request, the Cumberland County Prosecutor's Office
produced letters addressed to Plaintiff and the Vineland
Municipal Court. (Id. ¶ 90.) Plaintiff maintains that the
signature on the letter addressed to the Vineland Municipal
Court contains an improper or forged signature of Defendant
Jonathan M. Flynn. (Id. ¶ 90.)

Plaintiff alleges that the "CDR 2 Securities Forms styled
as Arrest Warrants created 4/21/10 [were] clearly un-signed by a
Judicial Officer," but Defendant Accosta allegedly failed to
provide Plaintiff with these documents in discovery. (Id. ¶¶ 91-
92.) Plaintiff filed "several [m]otions invoking his Sixth

Amendment Rights Speedy [sic] trial . . . which were never addressed until June 2013." (Id. ¶ 93.) Plaintiff "under threat" and duress, and in violation of his religion, appeared in court on various dates in October and November, 2012. (Id. ¶ 93.)

On November 29, 2012, Plaintiff apparently arrived late for his hearing after attempting to notify the court administrator, Donna Buckman. (Id. ¶ 95.) Upon his arrival, Plaintiff met with Mr. Amari in his office and Amari informed Plaintiff that he would seek dismissal based on a lack of discovery. (Id.) When Plaintiff returned to the courtroom, he was approached by two individuals, identified in the Fifth Amended Complaint as John Does 3 and 4, who were wearing "Vineland security shirts." (Id.) These individuals allegedly forced Plaintiff from his seat and handcuffed him to the wall, stating that a bench warrant was issued for his failure to appear. (Id.) John Doe 3 "then presented the ultimatum that the only way Plaintiff would be going home is if he 'take a hit' or pay the $1503.00 purported Bench Warrant 'Bail' for failure to appear." (Id.) Amari then "worked out the process for the Plaintiff to accept a plea of guilty to a municipal ordinance 'Any Acts against the Peace of the City of Vineland.'" (Id.)

At some point, Plaintiff "motioned the Court to reopen the matter because the plea was accepted under threat, duress and coercion" and because he was never charged with a violation of

6

the municipal ordinance to which he pleaded guilty. (Id.) Around the same time, Plaintiff "filed Tort Claims with the State of New Jersey and the Cumberland County Narcotics Task Force Attorney Diana V. Carrig." (Id.) According to Plaintiff, the motion to reopen "was heard and granted on" April 11, 2013. (Id.)

On that same date, Plaintiff "submitted an OPRA request to the Municipal Court and obtained copies of the CDR 2 Securities forms styled as Arrest Warrants . . . and discovered more false statements and the fact that the documents had no verified findings by a Judicial Officer in accordance with the Rules Governing the Courts of New Jersey." (Id.)

Plaintiff appeared at a hearing on May 1, 2013 and Judge Kasper required "the Municipal Prosecutor and Office to turn over the missing discovery materials within a specific time period." (Id. ¶ 96.) Defendants Accosta, Duffy, and the Vineland Municipal Prosecutor's Office did not provide the materials within the specified timeframe. (Id.) On June 20, 2013, Judge North dismissed the action "where the Plaintiff was compelled to act as a Defendant." (Id. ¶ 104.) Presumably, this is a reference to the charges against him in Vineland Municipal Court arising from the April 21, 2010 search.

Plaintiff attempted to file citizen complaints pursuant to N.J. Court Rule 7:2 against Defendants Wehling, Accosta, Cruz,

Duffy, and O'Neill. (Id. ¶¶ 97-100.) Plaintiff appears to contend that Judge Kasper found probable cause against Wehling for "crimes in violation of N.J.S.A. 2C:13-8 (Human Trafficking), N.J.S.A. 2C:30-6 (Crime of Official Deprivation of Civil Rights), N.J.S.A. 2C:28-2 (False Swearing), N.J.S.A. 2C:28-4 (False Reports) and 18 U.S.C. 1581 (Peonage) the federal human trafficking act." (Id. ¶ 97.) The Vineland Municipal Court did not set a hearing date for Wehling, nor does it appear that the Vineland Court "provided the plaintiff with determinations" regarding Accosta, Duffy, and O'Neill. (Id. ¶¶ 100-01.) Plaintiff alleges that "the City of Vineland Municipal Court, Heim, Marabel, and Montanez all abused their discretion, offices and authority." (Id. ¶ 101.)

Plaintiff asserts that a case against Wehling proceeded in Cape May County in May, 2013 involving a complaint by "Cornell Dixon"[2] involving an allegation of sexual assault. (Id. ¶ 102.)[3] It is unclear from Plaintiff's pleadings what happened thereafter, although the Fifth Amended Complaint refers to a

---

[2] It is apparent that Plaintiff was offended by Defendants' reference to him as Cornell Dixon because it is "incidental to slavery with regards to dehumanizing treatment and practice of depriving persons of African descent of their dignity, names, religion and heritage (national origin, religious identities, cultural nationality and ethnicity)." (Id. ¶ 103.)
[3] It is unclear whether this case against Wehling in Cape May County is the same as the "Internal Affairs Investigation" discussed below.

hearing on his motion to reopen "State v. Wehling" before Judge Wild in the Superior Court of Cape May County on or about May 5, 2014. (Id. ¶ 125.) Plaintiff's motion to reopen was denied. (Id. ¶ 127.)

On or about June 24, 2013, Plaintiff participated in an "Internal Affairs Investigation conducted by the defendant David Hogan of the Cape May County Prosecutor's Office." (Id. ¶ 106.) Plaintiff contends that on or about August 8, 2013, Hogan prepared a false report stating that "The criminal complaints [against the three occupants of the home searched on April 21, 2010, Scott and Alvin McArthur and Cornell Dixon] were approved telephonically by Superior Court Judge Becker but Wehling made a clerical error and signed Becker's name on the line below where it belonged." (Id. ¶ 110.) According to Plaintiff, Hogan's report also included the following: "This investigation determined that Detective Lynn Wehling should be Exonerated of the allegation of False Arrest and Civil Rights Violations brought by Cornell Dixon. The arrest was lawful and proper with a clerical error giving Mr. Dixon an opportunity to file a false complaint." (Id. ¶ 110) (emphasis in original). Plaintiff disputes Hogan's characterization of Wehling's testimony during

9

the investigation.[4] (Id.) Plaintiff also takes offense at Hogan's identification of Plaintiff as "Black" or "B/M." (Id.)[5]

Plaintiff also filed a complaint with the New Jersey Office of the Attorney General Division of Civil Rights, which was not pursued because the conduct about which Plaintiff complained was "not covered under the provisions of the LAD or FLA." (Id. ¶ 109.) Additionally, he appears to have sought compensation from the New Jersey Division of Criminal Justice Victims Compensation Office, which was denied due to pending charges against "the police officer." (Id. ¶ 122.) It is not clear to whom this refers.

It appears that Plaintiff on or about June 24, 2014, "re-submitted certifications of probable cause . . . alleging 'Theft', 'Human Trafficking', 'Bias Intimidation', Crime of Official Deprivation of Civil Rights to the Municipal Court," which were allegedly ignored. (Id. ¶¶ 140-41.) Plaintiff alleges that the "Defendant City, County and State incidental to slavery

---

[4] Moreover, Plaintiff contends that Defendant O'Neill "provided false information to the Defendant David Hogan at the Cape May County Prosecutor's Office as well." (Id. ¶ 120.) It is unclear whether O'Neill made these allegedly false statements as part of the same "Internal Affairs Investigation" discussed above or some other proceeding.

[5] It is appears that Plaintiff subsequently filed a complaint against Hogan with the New Jersey Office of the Attorney General "Corruption and Government Fraud Bureau," which resulted in no investigation or action against Hogan according to Plaintiff's pleading. (Id. ¶ 138.)

retain a persistent widespread custom or practice of protecting Public Servants, Employees and Officers from citizen or criminal complaints filed by persons of African descent, that said conduct constitutes old fashioned Jim Crow and Slavery customs that historically have been in effect in the North and South." (Id. ¶ 143.)

### B.   Procedural history

Plaintiff initially filed this action on December 18, 2012 and it was assigned to the Honorable Joseph E. Irenas. [Docket Item 1.] By order entered January 7, 2013, Judge Irenas dismissed Plaintiff's fifty-eight page complaint for failure to comply with Rule 8(a)(2), Fed. R. Civ. P. [Docket Item 3.] Plaintiff on three occasions thereafter sought leave to file an amended complaint, which Judge Irenas denied for failure to cure the deficiencies in his initial complaint and for futility. [Docket Items 10, 16, & 20.] On August 13, 2013, Plaintiff filed a motion to reopen and for leave to file a Fourth Amended Complaint [Docket Item 21], which Judge Irenas also denied. [Docket Item 24.] Judge Irenas prohibited Plaintiff from seeking further leave to amend. Plaintiff appealed and the Third Circuit addressed Plaintiff's Complaint submitted in August, 2013 which consisted of seven counts against 25 named defendants.[6] The Court

---

[6] Although there is significant overlap between the defendants named in Plaintiff's previous complaints and his Fifth Amended

of Appeals disagreed with Judge Irenas' determination that
Plaintiff's August, 2013 complaint failed to satisfy Rule
8(a)(2). The Court of Appeals found that Plaintiff "asserted
seven claims of malicious prosecution and conspiracy to commit
civil rights violations," as well as "claims of unlawful search
and seizure and illegal arrest." El v. Wehling, 548 F. App'x
750, 752 (3d Cir. 2013). Upon remand, Plaintiff was permitted to
file a Fourth Amended Complaint. [Docket Item 31.]

   Plaintiff subsequently filed a motion for service of
summons by the U.S. Marshals Service [Docket Item 32], a motion
for recusal [Docket Item 33], and a motion for relief and for
writ of mandamus [Docket Item 36]. Judge Irenas denied all three
motions. [Docket Items 37, 38, & 39.] Plaintiff then filed three
motions to vacate Judge Irenas' denial orders [Docket Items 40,
41, & 42] simultaneously with three notices of appeal [Docket
Items 43, 44, 45.] Judge Irenas then entered an order of recusal
and this case was reassigned to the undersigned. [Docket Items
48 & 49.] By Order entered December 24, 2014 [Docket Item 55],
this Court granted Plaintiff's "motion to vacate order denying
request for service of summons of civil rights complaint"
[Docket Item 40] and denied Plaintiff's "motion to vacate order

---

Complaint, the defendants are not identical. Some defendants
have been added and others dropped.

dismissing petition for mandamus" [Docket Item 41].[7] The Court directed Plaintiff to submit an updated application to proceed without prepayment of fees. Upon reconsideration, the Court permitted Plaintiff to proceed in forma pauperis based on his application submitted in April, 2014. [Docket Item 59.] The Court directed the Clerk to file Plaintiff's Fifth Amended Complaint, but did not permit the service of summonses pending screening of Plaintiff's Fifth Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), which now follows.

## III. STANDARD OF REVIEW

Section 1915(e)(2)(B) requires the Court to screen Plaintiff's Complaint and to dismiss any frivolous or malicious claim, any claim that fails to state a ground upon which relief may be granted, and/or any claim that seeks monetary damages from a defendant with immunity. See 28 U.S.C. § 1915(e)(2)(B)(i)-(iii); Neitzke v. Williams, 490 U.S. 319, 325 (1989).

In determining the sufficiency of a pro se complaint, the Court must liberally construe the allegations in favor of the plaintiff, and generally accepts as true all factual allegations. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). The Court may, however, freely ignore the plaintiff's "legal

---

[7] The Court also dismissed as moot Plaintiff's "motion to vacate order dismissing affidavit to recuse" [Docket Item 42].

conclusions" and need not credit a pleading that offers little
more than "labels and conclusions or a formulaic recitation of
the elements of a cause of action[.]" Ashcroft v. Iqbal, 556
U.S. 662, 678 (2009) (quotation omitted). Rather, the
plaintiff's factual allegations must be facially sufficient to
demonstrate a "plausible" right to relief, by pleading factual
content sufficient for the court "to draw the reasonable
inference that the defendant is liable for the misconduct
alleged." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544,
570 (2007)).

**IV. DISCUSSION**

Plaintiff's Fifth Amended Complaint contains 49 "counts"
and purports to assert claims as varied as "Unlawful Search and
Seizure," securities fraud, sexual assault, extortion, and human
trafficking. (Id. ¶ 1.)[8] The 537-page Fifth Amended Complaint

---

[8] The Fifth Amended Complaint begins with the following:
    Relator hereby asserts the following claims . . . pursuant to
    several violations of Common law, Admiralty law, Substantial
    Burden of Free Exercise of Religion-Obstruction of Free
    Exercise of Religion, Unlawful Search and Seizure,
    Denationalization-Cruel and Unusual Punishment, Deprivation
    of Equal Protection and Equal Justice, False Arrest-
    imprisonment, false light, miscellaneous frauds (Fraud upon
    the Court, Securities Fraud, Fraudulent concealment,
    Fraudulent inducement-common law and Admiralty torts),
    conspiracy to interfere with civil rights, civil conspiracy,
    joint enterprise, conspiracy, refusing or neglecting to
    prevent, failure to train, failure to supervise, State
    Created Danger, willful and official misconduct, malicious
    prosecution, malicious abuse of process, abuse of legal
    process, assault, battery, sexual assault, extortion,

describes a variety of conduct by the 40 named defendants, numerous fictitious defendants, and others who are unnamed in the caption or in Plaintiff's recitation of the defendants, but are referred to as defendants later in the complaint. It appears, however, that all of Plaintiff's claims stem from a single incident on April 21, 2010 after which Plaintiff faced criminal prosecution in Vineland Municipal Court.

   To assess whether Plaintiff has stated any viable claims upon which relief may be granted, the Court has distilled Plaintiff's voluminous Fifth Amended Complaint to the following two categories of claims: claims pursuant to 42 U.S.C. § 1983 and claims under New Jersey law.[9]

---

   intentional infliction of emotional distress, negligence, defamation of character (libel), human trafficking (Title 18, Chapter 77 and N.J.S.A. 2C:13-8); fraud-extortion (18 U.S.C. Chapter 26); i.e. deprivation of Civil Rights, Civil Rights Act of 1866, 14 Stat. 27-30, 42 U.S.C. 1981-1988.
(5th Am. Compl. ¶ 1.)
[9] The Court notes at the outset that Plaintiff refers in Paragraph 46 of the Fifth Amended Complaint to the matter of El Aemer El Mujaddid v. City of Vineland, CAM-L-004550-13, Superior Court of New Jersey, Law Division, Camden. (Id. ¶ 46.) It appears that this state court litigation may involve claims arising from the same conduct giving rise to the instant matter. Because the Court is unable to determine the precise nature and status of Plaintiff's state court case, which may remain pending, the Court will not dismiss this action based on res judicata or abstention grounds at this time.

**A.    42 U.S.C. § 1983[10]**

The majority of Plaintiff's claims appear to arise under 42 U.S.C. § 1983 including claims for excessive force, false arrest, malicious prosecution, as well as claims for violations of his constitutional rights under the First, Fourth, Eight, and Fourteenth Amendments. Plaintiff also attempts to assert claims for municipal liability under § 1983 against Cumberland County and the City of Vineland.

Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To state a claim for relief under section 1983, a plaintiff must allege: 1) the violation of a right secured by the Constitution or laws of the United States and 2) that the alleged deprivation was committed or caused by a person

---

[10] Plaintiff also purports to assert claims under <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971). In <u>Bivens</u>, the Supreme Court held that one is entitled to recover monetary damages for injuries suffered as a result of federal officials' violations of the Fourth Amendment. The Supreme Court thus created a federal counterpart to the remedy created by 42 U.S.C. § 1983. In the present case, <u>Bivens</u> is inapplicable because Plaintiff only asserts claims against persons acting under state, not federal law. Therefore, to the extent Plaintiff seeks to assert a <u>Bivens</u> claim, such claim will be dismissed as futile.

16

acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255–56 (3d Cir. 1994). See also Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

The caption of the Fifth Amended Complaint indicates that Plaintiff seeks to assert claims against the individual defendants in both their official and individual capacities.

The Supreme Court has made clear that official capacity suits are simply an alternative to "pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 166 (1985) (quoting Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690, n.55 1978)). "Suits against state officials in their official capacity therefore should be treated as suits against the State." Hafer v. Melo, 502 U.S. 21, 25 (1991) (citing Graham, 473 U.S. at 166). In contrast, personal capacity suits "seek to impose individual liability upon a government officer for actions taken under color of state law." Id. "Thus, '[o]n the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right.'" Id. (quoting Graham, 473 U.S. at 166). An official capacity action requires more because a governmental entity is liable under section 1983 only when official policy is "the moving force of the constitutional

17

violation." <u>Polk Cnty. v. Dodson</u>, 454 U.S. 312, 326 (1981) (quoting <u>Monell</u>, 436 U.S. at 694).

    In the present case, although Plaintiff seeks to assert claims against the individually named defendants in their official and individual capacities, the Fifth Amended Complaint is devoid of facts supporting claims against any of the defendants in their official capacities. Plaintiff fails provide specific allegations that the purported misconduct was the result of official policy. Instead, Plaintiff's Fifth Amended Complaint only contains conclusory statements regarding official policies of racial discrimination and racial profiling. For example, "Relator alleges that incidental to slavery it is the defendant's policy to deprive the freedom, liberty and property of persons of African descent for possession of CDS when their presence is on premises which CDS is alleged to be found irrespective of where the CDS is found and irrespective of one person claiming ownership or responsibility." (<u>Id.</u> ¶ 219.) Plaintiff merely labels his allegations of misconduct against various individuals as the product of official policy or custom. Such conclusory allegations are insufficient to support an official capacity claim against any defendant.[11]

_____

[11] Likewise, Plaintiff's claims against the New Jersey State Police fail because "the state and arms of the state may not be sued under § 1983." <u>Smith v. New Jersey</u>, 908 F. Supp. 2d 560, 563 (D.N.J. 2012); <u>see</u> <u>also</u> <u>Will v. Michigan Dep't of State</u>

### 1.   Unlawful search and seizure

Plaintiff alleges that he was subject to an
unconstitutional search and seizure on April 21, 2010 when
officers searched the house where he was a guest without a valid
arrest warrant and without probable cause. Moreover, Plaintiff
contends that he was subject to an unreasonable strip search by
Officer O'Neill before being transported to the station. The
Fifth Amended Complaint contains sufficient factual allegations
for these claims to proceed at this stage.

The Fourth Amendment provides: "The right of the people to
be secure in their persons, houses, papers, and effects, against
unreasonable searches and seizures, shall not be violated, and
no Warrants shall issue, but upon probable cause, supported by
Oath or affirmation, and particularly describing the place to be
searched, and the persons or things to be seized." U.S. Const.
amend. IV. "To be constitutionally sound, search warrants must
state probable cause and 'particularly describe the place to be
searched, and the persons or things to be seized.'" Bartholomew

---

Police, 491 U.S. 58, 64 (1989). Similarly, Plaintiff's claims
against the Cumberland County Prosecutor's Office are barred
because it is not a person amenable to suit under § 1983 and
sovereign immunity. See Landi v. Borough of Seaside Park, Civ.
07-5319 (FLW), 2009 WL 606141, at *5 (D.N.J. Mar. 9, 2009)
(dismissing claims against county prosecutor's office based on
sovereign immunity).

v. Commonwealth of Pennsylvania, 221 F.3d 425, 428 (3d Cir. 2000) (quoting U.S. Const. amend. IV).

"It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." Payton v. New York, 445 U.S. 573, 586 (1980) (internal quotation omitted). Although there are several exceptions to the warrant requirement, a warrantless search generally must be supported by probable cause. Couden v. Duffy, 446 F.3d 483, 496 (3d Cir. 2006). Similarly, in general, "a seizure is reasonable only where it is justified by a warrant or probable cause." Id. at 494.

In the present case, Plaintiff alleges that the April 21, 2010 search and seizure occurred without probable cause. Notably, the principal allegation in the Fifth Amended Complaint is that Wehling falsified and/or forged the search or arrest warrant which purportedly justified the April 21 search. In addition, Plaintiff contends that he was arrested "because of his mere propinquity to Universal S. A. Bey [a.k.a. Scott McArthur]" and due to his "mere presence on or in a premises where CDS is found." (5th Am. Compl. ¶ 1311-12.) These allegations are sufficient for Plaintiff's claims against those allegedly involved in the search and arrest to proceed past the screening stage. See Castro v. Perth Amboy Police Dep't, Civ. 13-3376 (MAS), 2014 WL 229301, at *3 (D.N.J. Jan. 21, 2014)

(allowing unlawful search claim to proceed where plaintiff
alleged that defendants entered his residence with consent or
valid warrant, conducted search, and destroyed plaintiff's
property); Moore v. Dow, Civ. 11-281, 2011 WL 2182115, at *8
(D.N.J. June 2, 2011) (allowing unlawful search and seizure
claim to proceed past sua sponte dismissal where plaintiff
claimed the search warrant was not signed by a magistrate, but
was forged by the defendant).

Having undertaken the arduous task of combing through the
537-page Complaint to determine who was involved in the April
21, 2010 search, the Court will permit Plaintiff's unlawful
search and seizure claim to proceed against certain defendants.[12]
Plaintiff's Complaint names a laundry list of defendants who
were allegedly involved in the search including members of the

---

[12] Although the Court will permit Plaintiff's claim based on an
unlawful search and seizure to proceed at this time, the Court
notes that Plaintiff may lack standing to assert a claim based
on an unlawful search. The Supreme Court has for purposes of
standing distinguished between overnight guests and persons
merely present at the time of the challenged search. See
Minnesota v. Carter, 525 U.S. 83, 90 (1998) ("[A]n overnight
guest in a home may claim the protection of the Fourth
Amendment, but one who is merely present with the consent of the
householder may not."). See also United States v. Mosley, 454
F.3d 249, 259 (3d Cir. 2006). Here, Plaintiff alleges that he
was a guest in Mr. McArthur's home and he was sleeping when the
allegedly improper search occurred. A generous reading of
Plaintiff's pleading suggests that he was an overnight guest as
opposed to a mere visitor to Mr. McArthur's home. Defendants, of
course, are free to challenge this characterization in due
course.

Cumberland County Police Department, the City of Vineland Police Department, and the New Jersey State Police. However, the Court will only permit Plaintiff's search and seizure claim to proceed against those defendants for whom Plaintiff provides a factual basis for such a claim.[13] Although Plaintiff states the involvement of the Cumberland County Narcotics Task Force, the Cumberland County Prosecutor's Office, the City of Vineland Police and T.E.A.M., and the New Jersey State Police, claims against these entities cannot proceed on a theory of respondeat superior. As such, Plaintiff's claim premised on an unlawful search and seizure may only proceed against the individuals against whom Plaintiff alleges specific facts regarding their conduct of the search and seizure at issue, namely Wehling, O'Neill, Cruz, and Sirakides. (5th Am. Compl. ¶ 863.)[14][15]

---

[13] For example, Plaintiff asserts only vague and conclusory allegations against Defendants McKinney, Erdman, Nate, Boland, Tennant, Cappucio, Langfield, Innella, Parkinson, Rocap, and Jacobs regarding their roles in the allegedly improper search and seizure. The same is true of Defendants Bernard, Chopek, Cervini, Mollik, Carella, Cavagnaro, Shadlinger, Ramos, Candelario, and Patilucci.

[14] Plaintiff lists Dennis Hernon as a defendant in the caption of the Fifth Amended Complaint and identifies him later as a member of Cumberland County Narcotics Task Force. However, unlike the other Cumberland County, Vineland, and State Police officers, the Fifth Amended Complaint contains no factual allegations against Hernon. Therefore, Plaintiff's claims against him will be dismissed.

[15] As with other claims the Court permits to proceed below, the Court makes no determinations regarding absolute or qualified immunity at this time because the immunity analysis is highly

## 2.    Unlawful strip search

The Court next turns to Plaintiff's claim that his Fourth Amendment rights were violated as the result of a strip search. In Bell v. Wolfish, 441 U.S. 520 (1979), the Supreme Court held that visual body-cavity searches of pre-sentence detainees do not violate the Fourth Amendment as long as the searches are related to a legitimate goal or interest. Id. at 560. In Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington, 132 S. Ct. 1510 (2012), the Supreme Court held that a county jail's policy of requiring all detainees, regardless of the circumstances of arrest, suspected offense, or criminal history, to submit to a non-invasive, visual strip search upon admission did not violate the Fourth Amendment. Id. at 1518. However, the Court in Bell observed that searches must be conducted in a reasonable manner, and abusive searches are impermissible. Bell, 441 U.S. at 560; see also Watson v. Sec'y Pennsylvania Dep't of Corr., 436 F. App'x 131, 136 (3d Cir. 2011) ("The intrusive and humiliating nature of such a search, conducted on an arbitrary basis, calls into question its reasonableness and, thus, its constitutionality.").

Here, Plaintiff appears to claim that he was unreasonably and abusively strip searched by Officer O'Neill before being

fact-sensitive and thus more appropriately raised in this case in later proceedings.

transported to the station. Plaintiff contends that "O'Neil used his fingers to reach in private regions [anal and genital] [sic] of plaintiff's body" and when Plaintiff complained, O'Neill pushed him into a wooden banister. (5th Am. Compl. ¶ 86.) Accepting these allegations as true, it is conceivable that the manner in which Plaintiff was searched, which Plaintiff alternately describes as "groping" (Id. ¶ 1275), "brush[ing]" (Id. ¶ 1276), and "similar to how white slavers would do to an African" (Id. ¶ 86), was unreasonable in violation of the Fourth Amendment. Therefore, the Court will permit Plaintiff's claim against Officer O'Neill based on an unreasonable strip search to proceed at this time.

### 3. Excessive force

Plaintiff contends that Officer O'Neill threw him into a banister during the course of his arrest and applied handcuffs too tightly.

The Fourth Amendment's objective reasonableness standard controls where a police officer allegedly uses excessive force during an arrest. See Graham v. Connor, 490 U.S. 386, 397 (1989). To establish a claim for excessive force as an unreasonable seizure, a plaintiff must show that: (a) a seizure occurred; and (b) that seizure was unreasonable. See Rivas v. City of Passaic, 365 F.3d 188, 198 (3d Cir. 2004) (citing Curley v. Klem, 298 F.3d 271, 279 (3d Cir. 2002)). Proper application

24

of this objective reasonableness standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Saucier v. Katz, 533 U.S. 194, 205 (2001). Ultimately, "the question is whether the officers' actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them." Graham, 490 U.S. at 397.

The Court of Appeals has specifically recognized that a plaintiff who suffers serious injury as a result of "excessively tight" handcuffs when officers ignore complaints that the handcuffs are causing significant pain may establish that the officer's "use of force was excessive in violation of the Fourth Amendment." Kopec v. Tate, 361 F.3d 772, 777 (3d Cir. 2004).

In analyzing excessive force claims based on excessively tight handcuffs, courts in the District of New Jersey have considered "the intensity of the plaintiff's pain, the officer's awareness of the plaintiff's pain, whether the plaintiff asked to have the handcuffs removed and how long after those requests the handcuffs are removed, whether there were circumstances justifying a delay in removing the handcuffs, and the severity of the injury the plaintiff suffered." Cincerella v. Egg Harbor

25

<u>Twp. Police Dep't</u>, Civ. 06–1183 (RBK), 2009 WL 792489, at *10 (D.N.J. Mar. 23, 2009).

In the present case, Plaintiff alleges that O'Neill, after conducting an unwarranted and unreasonable invasive strip search, "bullied" him and pushed him into a wooden banister while handcuffed. (5th Am. Compl. ¶ 1278.) According to Plaintiff, he had not committed a crime and posed no immediate threat to the officers. Nor did he resist arrest or attempt to flee. (<u>Id.</u> ¶ 1287.) Plaintiff further alleges that "defendants took a picture of [Plaintiff] while he was in pain from the extremely tight handcuffs." (<u>Id.</u> ¶ 1278.) These allegations, taken as true, form a plausible basis for an excessive force claim against Officer O'Neill, and the Court will permit such a claim to proceed.

### 4. False arrest

Plaintiff alleges two incidents of false arrest, the first, which the Court discussed above in relation to the April 21, 2010 search, and the second, which occurred on November 29, 2012 after a bench warrant was issued for his arrest.

The Fourth Amendment prohibits a police officer from seizing a citizen except on probable cause. <u>See</u> <u>Albright v. Oliver</u>, 510 U.S. 266, 274–75 (1994). To state a claim for false arrest under the Fourth Amendment, plaintiff must establish: (1) that there was an arrest and (2) that the arrest was made

without probable cause. James v. City of Wilkes-Barre, 700 F.3d 675, 680 (3d Cir. 2012). "[W]here the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." O'Connor v. City of Philadelphia, 233 F. App'x 161, 164 (3d Cir. 2007) (citing Groman v. Township of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995)). "Probable cause to arrest exists when the facts and the circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788 (3d Cir. 2000) (citation omitted).

In the present case, the same facts which support a claim for an unlawful search and seizure also support a claim for false arrest. Plaintiff's allegations that he was arrested based on a false or forged arrest warrant and without probable cause are sufficient to permit a claim for false arrest to proceed against the individual defendants involved in his arrest on April 21, 2010: Wehling, O'Neill, Cruz, and Sirakides.[16] (5th Am. Compl. ¶ 208.)

---

[16] As with Plaintiff's claim for unlawful search and seizure, the Court will only permit Plaintiff's false arrest claim to proceed against the defendants for whom Plaintiff has alleged some factual basis to support such a claim, as opposed to those defendants whose names appear only as part of a list coupled with conclusory allegations.

In contrast, Plaintiff cannot sustain a claim for false arrest against John Does 3 and 4 (two individuals wearing "Vineland security shirts") who allegedly placed him in handcuffs after a bench warrant was issued for his failure to appear on November 29, 2012. Plaintiff pleads no facts suggesting that the bench warrant was invalid. Even accepting Plaintiff's allegations as true regarding his efforts to notify the court of his tardiness, it appears that this second "arrest" about which he complains occurred pursuant to a validly issued bench warrant. As such, no claim for false arrest may proceed based on his arrest or detention on November 29, 2012. Any such claim against John Does 3 and 4 will be dismissed with prejudice.

### 5. Malicious prosecution

The Fifth Amended Complaint contains repeated and varied allegations of investigative and prosecutorial misconduct, stemming not only from the charges against Plaintiff, but also his attempt to pursue citizen complaints against many of the named defendants in this case. It appears, however, that Plaintiff's only potentially viable claims for malicious prosecution are against Webb-McRae, Flynn, Riley, Accosta, and Duffy.

To state a claim for malicious prosecution under section 1983, a plaintiff must show that: "(1) the defendants initiated

a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." McKenna v. City of Philadelphia, 582 F.3d 447, 461 (3d Cir. 2009). The element of malice may be inferred from a lack of probable cause. Robinson v. Jordan, 804 F. Supp. 2d 203, 206 (D.N.J. 2011).

In the present case, Plaintiff alleges that Webb-McRae, Flynn, Riley, Accosta, and Duffy knew that the CDR 2 forms were based on false statements, were unsigned, and lacked a finding of probable cause by a judicial officer. (5th Am. Compl. ¶ 1090.) Further, these defendants allegedly prosecuted Plaintiff "for the sole purposes of placing him in a slave like condition." (Id.) These defendants allegedly "falsely charge[d] and selectively prosecute[d Plaintiff] for eight felonious charges based upon false statements" and concealed exculpatory evidence. (Id. ¶¶ 147, 155, 246, 1090.) The Court notes that the Fifth Amended Complaint is not particularly clear as to the outcome of the criminal proceedings against Plaintiff in

Vineland Municipal Court.[17] Nevertheless, the Court accepts as true for the instant purposes Plaintiff's repeated allegation that these charges were dismissed on June 20, 2013 by Judge North. (Id. ¶¶ 104, 197, 319, 334, 708.) As such, Plaintiff's claim for malicious prosecution may proceed against Defendants Webb-McRae, Flynn, Riley, Accosta, and Duffy for their respective roles in prosecuting Plaintiff for offenses stemming from his April 21, 2010 arrest.[18]

---

[17] The Court is mindful that the U.S. Supreme Court has held that in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Heck v. Humphrey, 512 U.S. 477, 486–87 (1994). To the extent Plaintiff's prosecution did not conclude in his favor or has not been deemed invalid, his claim for malicious prosecution, among other claims, could not proceed under § 1983.

[18] The Court notes some confusion regarding Plaintiff's prosecution in the Vineland Municipal Court which he challenges in this action. It is particularly unclear which defendants were actually involved in Plaintiff's prosecution. Nevertheless, the Court will permit Plaintiff's malicious prosecution claim to proceed against these defendants who Plaintiff alleges were involved, without prejudice to defendants' right to seek dismissal in due course.

### 6. Municipal liability

Plaintiff attempts to assert claims for municipal liability against Cumberland County and the City of Vineland principally for a failure to train their respective employees.

It is well-established that municipal liability under § 1983 "may not be proven under the respondeat superior doctrine, but must be founded upon evidence that the government unit itself supported a violation of constitutional rights." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990) (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658 (1978)). As a consequence, a municipality is liable under § 1983 only when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Monell, 436 U.S. at 694.

"Where the policy concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to deliberate indifference to the rights of persons with whom those employees will come into contact." Thomas v. Cumberland Cnty., 749 F.3d 217, 222 (3d Cir. 2014) (internal quotation and citation omitted). Moreover, "the deficiency in training must have actually caused the constitutional violation." Id. (internal quotation and alteration omitted).

Here, Plaintiff has failed to allege any facts beyond bare conclusions suggesting a policy or custom by Cumberland County or the City of Vineland that led to the alleged misconduct enumerated at length in the Fifth Amended Complaint. Instead, Plaintiff's allegations as to a policy or custom maintained by Cumberland County or the City of Vineland consist simply of labels ascribed to the alleged misconduct about which he complains. The following is typical of Plaintiff's allegations in this regard:

> The City of Vineland . . . established a de facto policy, practice or custom of arresting dark skin pigmented humans because of their mere presence on premises where CDS is alleged to be found permitting the unlawful seizure of Religious "Papers and Property" and the malicious prosecution of individuals innocent of the charges lodged against them and where no finding of probable cause had been made by a Judicial Officer . . . .

(5th Am. Compl. ¶ 270.) Such conclusory allegations without more are not enough to support a claim for municipal liability, as they are nothing more than an attempt to recast Plaintiff's claims against the individual defendants as claims against the municipal entities. Accordingly, Plaintiff's claims against Cumberland County and the City of Vineland for failure to train and for a policy of arrests based on skin color will be dismissed.[19]

---

[19] The Court will also dismiss Plaintiff's claims against the Cumberland County Narcotics Task Force because it is not a separate entity that can be sued under § 1983. See <u>Bonenberger</u>

32

### 7.   Equal Protection and Due Process

Plaintiff's complaint is long on sweeping historical statements, but short on pertinent facts to support a claim for a violation of his Equal Protection or Due Process rights. Consequently, the Court will dismiss Plaintiff's claims premised on violations of the Fourteenth Amendment.

"Racial profiling" is a violation of the Equal Protection Clause because the Clause "prohibits selective enforcement of the law based on considerations such as race." Whren v. United States, 517 U.S. 806, 813 (1996). As the Court of Appeals explained in Carrasca v. Pomeroy, 313 F.3d 828 (3d Cir. 2002), "[even t]he fact that there was no Fourth Amendment violation does not mean that one was not discriminatorily selected for enforcement of a law . . . . [E]qual protection claims under the Fourteenth Amendment require a wholly separate analysis from . . . claims under the Fourth Amendment." Id. at 836 (internal citations omitted); accord Gibson v. Superintendent of N.J. Dep't of Law and Pub. Safety, 411 F.3d 427, 440–41 (3d Cir. 2005). "To prevail on an equal protection claim in the racial

_____

v. Plymouth Twp., 132 F.3d 20, 25 (3d Cir. 1997) (noting that the Court of Appeals "treat[s] the municipality and its police department as a single entity for purposes of section 1983 liability"); Araromi v. Middle Twp. Police Dep't, Civ. 10-1048, 2014 WL 1301524, at *11 (D.N.J. Mar. 31, 2014) ("It follows that the [county SWAT Team] is not amenable to suit on its own, and summary judgment will be granted as to that entity.").

profiling context, [a p]laintiff[] would have to show that the challenged law enforcement practice had a discriminatory effect and was motivated by a discriminatory purpose." Carrasca, 313 F.3d at 834. For the purposes of the first prong of this inquiry, the plaintiff must "show that [he] is a member of a protected class and that [he] was treated differently from similarly situated individuals in an unprotected class." Bradley v. U.S., 299 F.3d 197, 206 (3d Cir. 2002). The second prong of this inquiry was expressly examined by the Supreme Court in Iqbal, where the Court pointed out that the plaintiff asserting an equal protection claim "must plead [facts showing] that the defendant acted with a discriminatory purpose" to permit the court's reasonable inference that the government-official defendant acted "for the purpose of discriminating on account of race." Iqbal, 556 U.S. at 676-77.

In the present case, Plaintiff fails to plead facts sufficient to satisfy either prong. First, Plaintiff has not alleged that he was treated differently from others similarly situated in an unprotected class. He contends that he was denied "the guarantees of the equal protection clause" that were afforded McArthur and Cruz "whom were of Hispanic or Latino ancestry and not dark skin pigmented" like Plaintiff. (5th Am. Compl. ¶ 569.) Plaintiff, however, does not explain how McArthur or Cruz were similarly situated to him or how they were treated

34

differently. Second, other than bald and outrageous allegations that defendants purposefully prosecuted him to enact slave-like conditions, Plaintiff has not alleged facts showing discriminatory intent. Moreover, because Plaintiff refers to "equal protection" when describing a variety of conduct, including his allegedly false arrest and malicious prosecution, as well as the apparent confiscation of his Moorish identification documents, it is unclear what specific conduct and by what defendants allegedly resulted in a violation of Plaintiff's Equal Protection rights. As such, Plaintiff's Equal Protection claim will be dismissed.

To the extent Plaintiff attempts to assert a procedural due process claim, such a claim is similarly infirm. To state a claim of a procedural due process violation, a plaintiff must allege (1) an asserted individual interest encompassed within the Fourteenth Amendment's protection of "life, liberty, or property," and (2) that the procedures available denied him or her of "due process of law." Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000) (citing Robb v. City of Phila., 733 F.2d 286, 292 (3d Cir. 1984)). To have a protected property interest, "a person clearly must have more than an abstract need or desire for it" or "a unilateral expectation of it," but rather must have "a legitimate claim of entitlement to it." Robb, 733 F.2d at 292. Courts look to state law to determine whether an

35

asserted property interest exists. Dee v. Borough of Dunmore,
549 F.3d 225, 229–30 (3d Cir. 2008).

Here, Plaintiff complains of a variety of misconduct which
he purports violated his procedural due process rights,
including the withholding of exculpatory evidence (Am. Compl. ¶¶
145, 248), the use of false arrest warrants and false statements
(Id. ¶ 154), and the failure to prosecute Defendant Wehling (Id.
¶¶ 1238, 857). Although such actions often arise in the context
of selective prosecution, it is clear that the decision of
whether or not to prosecute rests in the discretion of the
prosecutor. United States v. Armstrong, 517 U.S. 456, 464
(1996); United States v. Esposito, 968 F.2d 300, 306 (3d Cir.
1992). As such, Plaintiff cannot claim a protected property
interest in the prosecution or investigation of defendants such
as Wehling whom he accuses of wrongdoing and against whom he
sought to initiate criminal proceedings. In other words, the
Constitution does not confer on one person the right to obtain
the criminal prosecution of another.

As to defendants' alleged withholding of exculpatory
evidence, namely the allegedly falsified arrest warrant(s),
Plaintiff's allegations are insufficient to establish a
procedural due process violation. The Third Circuit has noted
that "[t]here can be no violation of [Brady v. Maryland, 373
U.S. 83 (1963)] unless the government's nondisclosure infringes

36

the defendant's fair trial right" and "the nondisclosure must do more than impede the defendant's ability to prepare for trial; it must adversely affect the court's ability to reach a just conclusion, to the prejudice of the defendant." United States v. Starusko, 729 F.2d 256, 262 (3d Cir. 1984). Accordingly, "[n]o denial of due process occurs if *Brady* material is disclosed in time for its effective use at trial." Id. (quoting United States v. Higgs, 713 F.2d 39, 44 (3d Cir. 1983)). In the present case, it is apparent that Plaintiff ultimately received the purportedly withheld discovery and, according to Plaintiff, the charges against him were eventually dismissed. Consequently, it is not at all clear from the Fifth Amended Complaint that Plaintiff was prejudiced as the result of defendants' alleged failure to disclose certain discovery materials, and thus, Plaintiff has not stated a claim for a violation of his procedural due process rights bases on a Brady violation.[20]

---

[20] The Court will similarly dismiss Plaintiff's claim for legal malpractice against Amari. Beyond vague and conclusory pleadings suggesting that Amari served as Plaintiff's public defender, Plaintiff has failed to allege with specificity that Amari breached a duty owed to Plaintiff which proximately caused damage to Plaintiff. See McGrogan v. Till, 167 N.J. 414, 425 (2001) ("The elements of a cause of action for legal malpractice are (1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of that duty by the defendant, and (3) proximate causation of the damages claimed by the plaintiff."). Plaintiff alleges that the charges against him were dismissed, rendering it unclear what damage Plaintiff suffered and how it was caused by Amari's representation.

Plaintiff alleges that defendants violated his substantive due process rights as the result of a state created danger. It appears that Plaintiff's state created danger claim is premised on the same facts which give rise to his civil rights and constitutional claims, namely the April 21, 2010 search and Plaintiff's subsequent efforts to pursue criminal charges and disciplinary proceedings against those involved. (5th Am. Compl. ¶ 1323). Like his municipal liability claim, Plaintiff refers to the New Jersey State Police's use of the term "black" and the Attorney General's "custom of not providing compensation or assistance to Victims of Crimes likes [sic] Human Trafficking." (Id. ¶¶ 1327, 1329.) The Court, based on Plaintiff's pleadings, is unable to divine a discrete set of facts or an independent basis for his state created danger claim.

"Individuals have a constitutional liberty interest in personal bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008). The Due Process Clause does not impose an affirmative obligation on the state to protect its citizens, id. (citing DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 195–96 (1989)), but courts "have recognized that a state actor may be held liable under the 'state-created danger' doctrine" when the following four conditions are met:

38

(1) the harm ultimately caused was foreseeable and fairly
direct;
(2) a state actor acted with a degree of culpability that
shocks the conscience;
(3) a relationship between the state and the plaintiff existed
such that the plaintiff was a foreseeable victim of the
defendant's acts, or a member of a discrete class of persons
subjected to the potential harm brought about by the state's
actions, as opposed to a member of the public in general; and
(4) a state actor affirmatively used his or her authority in
a way that created a danger to the citizen or that had
rendered the citizen more vulnerable to danger than had the
state not acted at all.

Henry v. City of Erie, 728 F.3d 275, 281–82 (3d Cir. 2013)

(citing Morrow v. Balaski, 719 F.3d 160, 177 (3d Cir. 2013)).

Plaintiff's allegations in support of a state created
danger claim are indistinguishable from those offered to support
his municipal liability claim. Plaintiff merely attaches the
"state created danger" label to the misconduct repeatedly
alleged throughout the Fifth Amended Complaint. For example,
Plaintiff asserts that the New Jersey Office of the Attorney
General maintained a policy of using the racial category of
"black" and custom of not providing assistance to crime victims.
Nothing in Plaintiff's Fifth Amended Complaint can be construed
as sufficient to satisfy the four conditions necessary to state
a claim for a state created danger. Therefore, the Court will
dismiss Plaintiff's state created danger claim.

### 8.   Sixth Amendment

Plaintiff alleges in conclusory fashion that his Sixth
Amendment speedy trial rights were violated.

39

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. In Barker v. Wingo, 407 U.S. 514 (1972), the Supreme Court set forth four guidelines to determine whether the Sixth Amendment's guarantee of a speedy trial has been violated: (1) the length of the delay; (2) the reason for the delay; (3) whether, in due course, the defendant asserted his right to a speedy trial; and (4) the prejudice to the defendant. See id. at 530; see also United States v. Dent, 149 F.3d 180, 184 (3d Cir.1998), cert. denied, Dent v. United States, 525 U.S. 1085 (1999).

Plaintiff has pleaded insufficient facts to state a claim for a violation of his speedy trial rights. The Fifth Amended Complaint is replete with references to "protracted resolution of this matter," failures to consider Plaintiff's motions, and violations of Plaintiff's speedy trial rights, but Plaintiff refers to so many state court and administrative proceedings that it is unclear at what point or points he believes his Sixth Amendment rights were violated. At the very least, the Fifth Amended Complaint is so prolix and convoluted that the Court cannot identify the length of delay about which Plaintiff complains or any of the other factors the Court is to consider in evaluating such a claim. By any plausible reading, the charges against Plaintiff were resolved within less time than

40

precedent cases for which no speedy trial violation was found.
See, e.g., Barker v. Wingo, 407 U.S. 514, 533 (1972) (finding no
violation of speedy trial rights where "well over five years"
elapsed between arrest and trial); Conroy v. Leone, 316 F. App'x
140, 144 (3d Cir. 2009) (holding that state court was not
unreasonable in concluding that speedy trial rights were not
violated despite four year delay between arrest and trial);
United States v. Hassan-Gouda, Crim. 07-258 (JBS), 2013 WL
1501695, at *5 (D.N.J. Apr. 8, 2013) (considering Barker factors
and declining to dismiss indictment on speedy trial grounds
despite six year delay). Therefore, the Court will dismiss
Plaintiff's Sixth Amendment speedy trial claim.

### 9.   First Amendment

Plaintiff's allegations regarding the violation of his
First Amendment are conclusory and meritless. Principally,
Plaintiff appears to complain that defendants repeatedly
referred to him as Cornell Dixon and confiscated his Moorish ID.

The Free Exercise Clause of the First Amendment provides
that "Congress shall make no law . . . prohibiting the free
exercise [of religion]." U.S. Const. amend. I. "[A] law that is
neutral and of general applicability need not be justified by a
compelling governmental interest even if the law has the
incidental effect of burdening a particular religious practice."
Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508

41

U.S. 520, 531 (1993). In contrast, where "the government action is not neutral and generally applicable, strict scrutiny applies, and the government action violates the Free Exercise Clause unless it is narrowly tailored to advance a compelling government interest." King v. Christie, 981 F. Supp. 2d 296, 331 (D.N.J. 2013), aff'd sub nom. King v. Governor of the State of New Jersey, 767 F.3d 216 (3d Cir. 2014). "[A] law targeting religious beliefs as such is never permissible" and the law is not neutral "if the object of a law is to infringe upon or restrict practices because of their religious motivation." Hialeah, 508 U.S. at 533.

Courts have recognized that the adoption of a Muslim name and the desire to be free of one's previous name may be part of the practice of religious faith. See Masjid Muhammad-D. C. C. v. Keve, 479 F. Supp. 1311, 1323 (D. Del. 1979). However, there are limits to one's right to be called by the adopted name. Id. at 1323-24. ("It does not follow, however, that plaintiffs are entitled to have the institution and its staff utilize their Muslim names for all purposes."); see also Howard v. Wilson, 176 F. App'x 468, 469 (5th Cir. 2006) ("Although the adoption of a Muslim name is considered an exercise of religious freedom, the refusal by prison officials to recognize the name change does not violate his free exercise of religion.") (internal citation omitted).

42

Plaintiff alleges that defendants "strip[ped] him of his dignity, name and heritage by their use of [the name Cornell] 'Dixon'" (5th Am. Compl ¶ 124) and by not referring to him by his "Moorish name" on various court-related and other documents. It is clear that Plaintiff "rejected" this so-called "Christian Anglo American name" (Id. ¶ 228), but it is not clear that he adopted another name as part of the practice of his religious faith. Plaintiff refers to the impairment of his nationality, national origin, ethnicity, and religious identity, misconduct he alternatively describes as "denationalization." At other points in the complaint, he says he identified himself under his "Moorish/Muslim-African and Cultural Name." (Id. ¶ 202.) Plaintiff has not stated a claim for a violation of his Free Exercise rights because he has not alleged consistently or coherently that the use of a Moorish name was part of the practice of his religion. He does not allege that Cornell Dixon was not his given name, nor does he allege that the police and public officials made up the name Cornell Dixon. The same is true of Plaintiff's allegation regarding the confiscation of his "Moorish I.D." To seize an arrestee's identification documents and other valuables pursuant to arrest is an established lawful practice. Plaintiff fails to allege sufficient facts to suggest that such conduct impaired the exercise of Plaintiff's religion.

Accordingly, the Court will dismiss Plaintiff's First Amendment claims.[21]

### 10.  Eighth Amendment

Plaintiff makes passing reference to the Eighth Amendment throughout the Fifth Amended Complaint and names the Cumberland County jail as a defendant, but the Court is hard-pressed to identify the basis of a claim for violation of Plaintiff's Eighth Amendment rights. Nevertheless, in the interest of completeness, the Court notes that Plaintiff's claims against the jail are facially deficient. A jail is not a "person" amenable to suit under 42 U.S.C. § 1983. See Marsden v. Federal BOP, 856 F. Supp. 832, 836 (S.D.N.Y. 1994) (county jail not an entity amenable to suit under 42 U.S.C. § 1983); Powell v. Cook County Jail, 814 F. Supp. 757, 758 (N.D. Ill. 1993) (a jail is not a "person" under § 1983); Vance v. County of Santa Clara, 928 F. Supp. 993, 995 (N.D. Cal. 1996) (county department of corrections is an agency of the county and cannot be sued separately from the county under § 1983). Accordingly, to the extent Plaintiff seeks to assert claims against the Cumberland County Jail, the Court will dismiss these claims with prejudice.

---

[21] Since Plaintiff has filed suit under the name Aemer K. C. El, this Court will use only this name.

**B.    Tort claims**

The Court similarly concludes that Plaintiff's tort claims arising under New Jersey law must be dismissed due to Plaintiff's failure to satisfy the notice of claim requirements under the New Jersey Tort Claims Act ("NJTCA"), N.J.S.A. 59:1-1 to 12-3. Under the NJTCA,

> [p]rior to filing a complaint, a plaintiff must submit a notice of claim to the public entity within ninety days of the claim's accrual, N.J.S.A. 59:8-8a, and must file suit within two years after the claim's accrual, N.J.S.A. 59:8-8b. The notice must include the name of the public entity, and the name of the employee or employees causing the injury, if known. N.J.S.A. 59:8-4e.

Velez v. City of Jersey City, 180 N.J. 284, 290 (2004). The NJTCA makes clear the consequences that result from a plaintiff's failure to comply with its notice requirements: such a claimant "shall be forever barred from recovering against a public entity or public employee." 14 N.J.S.A. 59:8-8. Plaintiff has failed to allege any facts suggesting that he filed notices under the NJTCA, and well over ninety days have passed since Plaintiff's tort claims accrued. Therefore, the Court will dismiss Plaintiff's tort claims for failure to comply with the notice requirements of the NJTCA, including Plaintiff's claim(s) for fraud.

**V.    CONCLUSION**

In light of the foregoing, the Court will dismiss in part Plaintiff's Fifth Amended Complaint. The Court will permit only

45

the following four claims under 42 U.S.C. § 1983 against a total of nine defendants to proceed past this screening stage: (1) unlawful search and seizure (against Defendants Lynn A. Wehling, Steven O'Neill Jr., Gamaliel "Gami" Cruz, and Kenneth Sirakides); (2) excessive force (against Defendant Steven O'Neill Jr.); (3) false arrest (against Defendants Wehling, O'Neill, Cruz, and Sirakides); and (4) malicious prosecution (against Defendants Jennifer Webb-McRae, Jonathan M. Flynn, John Riley, Inez Accosta, and Edward Duffy). The Court will direct the Clerk to issue summonses for service by the U.S. Marshals Service. The Court expresses no opinion on the merits of these four claims. All other claims will be dismissed with prejudice. Plaintiff has had numerous opportunities to amend and properly plead his claims since he filed his initial complaint in December, 2012. Any opportunity to amend for a sixth time at this juncture would be futile. An accompanying Order will be entered.


**April 23, 2015**                     **s/ Jerome B. Simandle**
Date                                   JEROME B. SIMANDLE
                                       Chief U.S. District Judge